/.0

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.                                                  SUPERIOR COURT
                                                              CIVIL ACTION NO.:
                                                              2282CV00853

MAMNOON AHMAD KHAN,                )
                                   )
         Plaintiff                 )
                                   )
         v.                        )
SEDGWICK CLAIMS MANAGEMENT         )
SERVICES, INC., KIM HOTTEL,        )
COLLEEN VAN TUYL, DAVE NORTH,      )
MICHAEL ARBOUR, THE CARLYLE        )
GROUP, INC. & NATHAN URQUHART      )
                                   )
         Defendants                )

## COMPLAINT AND JURY DEMAND

### Parties

1. The Plaintiff, Mamnoon Ahmad Khan, ("Mr. Khan" or "Plaintiff"), is an individual who maintains a residence at 25 Paddock Drive, Plainville, Norfolk County, Massachusetts.

2. The Defendant, Sedgwick Claims Management Services, Inc. ("Sedgwick") is a foreign corporation headquartered at 1100 Ridgeway Loop Road, Second Floor, Memphis, Tennessee.

3. The Defendant, Kim Hottel, ("Ms. Hottel") is an individual agent of Sedgwick and maintains a corporate office at 1100 Ridgeway Loop Road, Second Floor, Memphis, Tennessee.

4. The Defendant, Colleen Van Tuyl, ("Ms. Van Tuyl"") is an individual agent of Sedgwick and maintains a corporate office at 1100 Ridgeway Loop Road, Second Floor, Memphis, Tennessee.

5. The Defendant, Dave North, ("Mr. North") is an individual agent of Sedgwick and maintains a corporate office at 1100 Ridgeway Loop Road, Second Floor, Memphis, Tennessee.

6. The Defendant, Michael Arbour ("Mr. Arbour") is an individual agent of Sedgwick and maintains a corporate office at 1100 Ridgeway Loop Road, Second Floor, Memphis, Tennessee

7. The Defendant, The Carlyle Group. Inc. ("Carlyle") is a foreign corporation headquartered at 1001 Pennsylvania Avenue NW, Washington, District of Columbia.

8. The Defendant, Nathan Urquhart ("Mr. Urquhart") is an individual agent of Carlyle and maintains a corporate office at 1001 Pennsylvania Avenue NW, Washington, District of Columbia..

Facts

9. Plaintiff is a Brown / non-Caucasian man from Pakistan. He immigrated to the United States in 1983.

10. Plaintiff's religion is Muslim.

11. At all times relevant, Defendants were aware of Plaintiff's race, national origin and religion.

12. In August 2014, Mr. Khan started working at York Risk Services Group, Inc. (York), which is a predecessor in interest of Defendant Sedgwick. Sedgwick was acquired by Defendant, Carlyle.

13. York hired Mr. Khan to work as a Claims Examiner in Braintree, Massachusetts. He worked with 20-25 other York employees and was the only non-white employee in the Braintree office.

14. Mr. Khan reported to Linda Martin, ("Ms. Martin") Claims Manager. Human Resources for York was located in New Jersey. Ms. Martin reported to Jessica Sorkin, ("Ms. Sorkin") who worked in New York City.

15. When Mr. Khan started at York, his workspace was at a cubicle. Another Claims Examiner, Steve Gigarjian, ("Mr. Gigarjian") was very friendly with Ms. Martin. Mr. Gigarjian made disparaging and racially charged comments to Mr. Khan and about him on a regular basis. For example, he would call him Paki and say to him "there goes another foreigner" when someone of color from the building walked by. He would say that Mr. Khan would not even know who Clint Eastwood is because of his heritage, and he laughed when someone else asked Mr. Khan if he knew who Clint Eastwood is. He would tell Mr. Khan that he needed to take English classes. He degraded Mr. Khan and often yelled at him.

16. A few times Mr. Khan reported Mr. Gigarjian's comments to Ms. Martin and told her that he made him feel inferior and that he wanted his comments to stop. She said she would talk to him, however, his comments did not stop.

17. On or about June 24, 2016, Mr. Khan was in the lunchroom and Mr. Gigarjian shoved him and spit at him. He picked up a kitchen knife, lifted it up over his shoulder and started coming towards Mr. Khan with the blade facing Mr. Khan. Fortunately, some co-workers intervened and stopped him. He screamed at Mr. Khan and literally threatened his life by telling him he was going to "take (Mr. Khan) down, take (Mr. Khan) out, and kill (him)," and he made racially disparaging remarks to him. Someone called Human Resources in New Jersey. He continued to work that day and so did Mr. Khan.

18. Thereafter, Mr. Khan got a call from Elisa Nanni ("Ms. Nanni") who worked in Human Resources in New Jersey. Mr. Khan explained to her what happened in the kitchen and she told him that he was going to be working in an office from that point forward and that Mr. Khan should lock the door from the inside. She said she was going to conduct an investigation.

19. Mr. Khan couldn't believe that York continued to let Mr. Gigarjian work after he threatened to kill him; nor could the people who intervened on his behalf. When Mr. Khan left his office to go to the men's room or to the kitchen or to talk to a co-worker, Mr. Gigarjian would follow Mr. Khan and stare at him. Gigarjian would wait for Mr. Khan in his car in the parking lot. Mr. Khan was scared and called Ms. Nanni and reported what was happening. Nothing changed so Mr. Khan called Jessica Sorkin, ("Ms. Sorkin") who was Ms. Martin's boss. Mr. Khan reported what was happening and she said something like, " he won't do anything but if he does just call the police." By this time, more than a month went by and the investigation was not completed.

20. In November 2016, Mr. Khan was in his locked office and Mr. Gigarjian took a screwdriver and tried to open the lock on the door. Mr. Khan called Ms. Nanni and she sent someone to stop him from breaking into Mr. Khn's office. She told Mr. Khan to leave the office and go home immediately "for (his) safety and ours." From that point forward, Mr. Khan was required to work from home while Mr. Gigarjian remained working in the office.

21. Mr. Khan was told York would send him a computer, scanner, fax and phone and transfer his saved files to allow him to work efficiently at home. Mr. Khan did not get these things for several weeks, making it nearly impossible for him to work. He did not get his computer hard drive until January 2017, which made doing his job incredibly difficult. Mr. Khan had to purchase a separate telephone so that he could do his job.

22. Mr. Gagarjian continued to work in the office. On information and belief, he still works for Sedgwick today, while Mr. Khan is sidelined and stuck working at home.

23. Mr. Khan was then transferred to a new manager, Brian Hanzl, ("Mr. Hanzl") who worked in New Jersey. Mr. Khan was transferred managers because he reported that Ms. Martin had not handled his complaints at all, causing the discrimination and harassment by Mr. Gigarjian to continue. Mr. Khan also had to work under Sal DiTomasso, ("Mr. DiTomasso") who was friendly with Ms. Martin.

24. Mr. DiTomasso treated Mr. Khan poorly as he was intimidating andbecause he screamed and yelled at Mr. Khan. He retaliated against Mr. Khan for reporting that Ms. Martin did not take action to stop the harassment against Mr. Khan. Mr. Khan did not ask to work for a different Manager. Sedgwick made this decision.

25. Due to a medical condition caused by the events at work, Mr. Khan took a leave of absence from approximately mid-January 2017 to April 14, 2017.

26. When he returned to work, he did not receive his annual performance evaluation in a timely manner. As a result, Mr. Khan did not receive a merit increase. Mr. Khan asked to receive his performance evaluation a number of times and his requests were ignored. On information and belief, no other employee who did not get their evaluations timely or had their merit increases delayed.

27. On May 10, 2017, Mr. Khan wrote to Rick Taketa, ("Mr. Takeda") the President and CEO of York and explained the events that had occurred with regard to being discriminated and harassed and made to feel like a second class citizen.

28. Mr. Taketa ordered an investigation by two law firms. As a result, Mr. Khan received multiple emails and letters from the attorneys who sought to speak with him. Because Mr. Khan did not have a lawyer, and because the lawyers were hired by York, Mr. Khan declined to meet with them.

29. On December 19, 2017, Mr. Khan wrote to Tom Warsop, ("Mr. Warsop") the new Chairman of York and explained the harassment and discrimination that he had experienced at York. On December 20, 2017, Mr. Khan received an email from Danielle McMahan,("Ms. McMahan") the new Executive VP of Human Resources for York. She arranged for Mr. Khan to meet with Jason Hall ("Mr. Hall") and Fran Watkins ("Mr. Watkins") in Boston on January 26, 2018. They both worked for York's Human Resources Management. At this meeting, Mr. Khan explained the discrimination that he had experienced since he started at York.

30. In March 2018, Ms. Watkins informed Mr. Khan that Mr. Gigarjian had been disciplined for his actions against Mr. Khan and that Mr. Khan would be given the raise that he had been denied. Mr. Khan was told that he did not receive a raise when he should have. He was also told that York would be implementing some new diversity, equity and inclusion programs.

31. During the meeting, Mr. Khan confirmed that he felt safe working at home, but continued to be bewildered as to why Mr. Gigarjian was permitted to continue to work

in the office (or for York at all) when he was left to work at home without the benefits of working with his coworkers.

32. On March 22, 2018, at 2:07 am. Mr. Khan received a message on Facebook from someone he did not know, Kenji Musahsi. The message stated, "you are an inferior lying faggot from the lowest race and religion that has ever existed, and you are a dick joke, nothing more. You are f—ked eternally with the faggot nation, someday, someday faggot. Be deceased." These are the same words that Mr. Gagarjian used with Mr. Khan when he worked with him in the Braintree office.

33. The message left Mr. Khan scared and as a result he called Ms. Nanni and read the message to her. Mr. Khan asked her to investigate by checking into the IP address of the sender because he thought it was from Mr. Gagarjian based on the language. She told him that there was nothing York could do about this message.

34. On March 25, 2019, Mr. Khan wrote to Ms. McMahan again, this time on the basis of receiving a title change that he was promised. For a long time prior, Mr. Khan had been promised by management that he would receive a change in his title from Claims Examiner to Complex Claims Examiner based on his experience and repeated written performance evaluations of "Exceeds Expectations." He was completing work on complex cases and had more experience than Christopher Eyester, who had the title Complex Claims Examiner.

35. In his email, he also explained that he continued to experience discrimination and harassment by management in that he was yelled at and treated poorly. In response, Ms. McMahon put Mr. Khan in touch with Jason Hall ("Mr. Hall"). For the next few months, Mr. Hall and Mr. Khan scheduled telephone calls every two weeks to discuss how things were going for him. However, there was no continued investigation of the discrimination and retaliation nor did Mr. Khan receive a title change.

36. In or around September 2019, Sedgwick acquired York. Mr. Khan started working on all new cases and for new managers. First, he worked for Philip Breedan ("Mr. Breedan"). In November 2019, he was assigned to report to Ms. Hottel, who works in New Jersey, and her supervisor, Ms. VanTuyl, who is the Director of Claims. Ms. Hottel and Ms. VanTuyl continue to be Mr. Khan's managers today. He has never met either of these women in person. Their communication is either by email or telephone. On information and belief, Mr. Khan is the only non-white employee in their working unit.

37. In early December 2019, Ms. Hottel called Mr. Khan and told him that Ray Wilt ("Mr. Wilt"), who is another Claims Examiner in New Jersey, would be his vacation back-up and vice-versa. She said that the two of them could not be on vacation at the same time. She also said that if Mr. Wilt wants time off at Christmas he will get priority over Mr. Khan because he celebrates Christmas and Mr. Khan does not. However, Ms. Hottel was aware that Mr. Khan had already scheduled time off around Christmas for the upcoming weeks and said that there would not be any conflicts because Mr. Wilt had

already used his vacation time for the year. She made clear that in the future, however, Mr. Wilt would get priority in choosing vacations.

38. In March 2020, the COVID 19 pandemic struck and Claims Examiners started working remotely. Sedgwick provided the other Claims Examiners, who are all white, laptop computers that would allow them to participate in Zoom meetings and Microsoft Teams meetings. Despite his repeated requests to Ms. Hottel and Ms. VanTuyl for updated computer equipment, his requests were ignored. The computer he was using did not have a camera or speakers. Therefore, he could see others on video calls and could hear them, but nobody could hear him. As a result, Mr. Khan was necessarily excluded from participating fully in these meetings. His exclusion continued until June 2021. At that time, when Ms. Hottel and Ms. VanTuyl were both on vacation, Mr. Khan contacted Joseph Fosnaught, who is Ms. VanTuyl's supervisor, and explained the situation to him. Within a few days, he ordered Mr. Khan a new computer and it was delivered to his home. It was a simple task that Ms. Hottel and Ms. VanTuyl ignored for over a year.

39. In November 2020, Mr. Khan called Ms. Hottel and told her that he wanted to take a leave of absence to travel to Pakistan to spend time with and take care of his mother who was elderly and ill. Mr. Khan's brother, Jawad Khan, was on the speakerphone with him during this call. Ms. Hottel told Mr. Khan that things were very busy at work and that they could not afford to have him take time off. She said she would talk to Ms. VanTuyl and get back to him, but she did not think that his request would be approved. Ms. Hottel did not get back to me. Mr. Khan kept promising his mother that he would come and visit her. On January 14. 2021, Mr. Khan's brother told his mother that he was unable to travel to Pakistan to visit her. She died a few hours later.

40. Ms. Hottel's denial of Mr. Khan's request for a leave of absence was inconsistent with Sedgwick's policies and the Family and Medical Leave Act. This intentional act on the part of Ms. Hottel to deny him the opportunity to see his mother before she died has changed his life forever. As a direct result, Mr. Khan has sought and continues to receive medical attention to address the physical and mental manifestations of his emotional distress from this event.

41. On January 14, 2021, Mr. Khan's brother was on speaker phone with him when he told Ms. Hottel that his mother had died and that he wanted to go to her burial and funeral services in Pakistan. Mr. Khan explained that he would have to leave immediately because of the lengthy travel time and because the burial custom of his religion requires a burial within a few days of death. Ms. Hottel told Mr. Khan that she would check with Ms. VanTuyl and get back to him but that she did not think his request was going to be approved. Ms. Hottel never got back to hiim.

42. Mr. Khan was unable to go attend his mother's burial or funeral services.

43. There was no business reason why management denied his request.

44. To this day Mr. Khan has suffered the emotional impact of not being able to spend time with his mother before she died or attend her funeral services.

45. On information and belief, no white, non-Muslim, American born employee has been denied a request to go to their parent's funeral services.

46. On another occasion thereafter, Ms. Hottel called Mr. Khan an Indian. Mr. Khan is not from India and Ms. Hottel was aware of that. A few days later, Ms. VanTuyl sent Mr. Khan an email in which she told him that her husband used to travel to India on business. Regardless of where Mr. Khan is from, it is not necessary for management to refer to his place of birth.

47. Additionally, Ms. Hottel and Ms. VanTuyl have asked Mr. Khan to train a number of new employees. Despite Mr. Khan providing their training, another employee is always assigned to be the new employee's mentor. Mr. Khan has never been assigned this title.

48. On May 4, 2021, Mr. Khan contacted Sean Rico from Sedgwick's Talent Acquisition Team about a job opening he saw posted on the portal. The posting did not include much information about the open position, such as the level of the job. Mr. Rico did not assist Mr. Khan. He let Mr. Khan know that he did not have more information about the position and that he should contact the manager of the position himself to get more information. Mr. Khan found that Mr. Rico's response to him was inconsistent with the manner in which he had observed the Talent Acquisition team assist other white, non-Muslim, American born Claims Examiners obtain jobs within the Company.

49. On May 5, 2021, Mr. Khan emailed Mr. Rico's supervisor, Tamie Hoyner, and explained that his interaction with Mr. Rico had been unsatisfactory. Ms. Hoyner did not respond to his email.

50. On May 10, 2021, Mr. Khan emailed Rachel Jackson, Managing Director Colleague Resources, and explained his dealings with Mr. Rico and his non-response from Ms. Hoyner.

51. On May 12, 2021, Ms. Jackson responded and let Mr. Khan know she would be in touch with him after she looked into the situation. Mr. Khan also contacted Heather Jacquette in Human Resources. She told Mr. Khan that she was going to get me more information on job grade and salary. However, she never got back to Mr. Khan.

52. Thereafter, Ms. Hoyner confirmed for Mr. Khan that the job he was interested in was the same level as his current job and it was not an advancement opportunity. It was unsettling to Mr. Khan that it took his contacting three people in Talent Acquisition and one week's time to obtain this information

53. Mr. Khan let Ms. Hottel know that he was interested in a promotion in a technical field. Rather than assist him in my advancement, she told him to apply for jobs in other

departments. Mr. Khan perceived her comment to mean that she would not miss him if he left her department.

54. Mr. Khan has witnessed Talent Acquisition and my management teams reach out to Claims Examiners proactively to assist then in obtaining promotions. For example, in May of 2021, Kelly Gallagher left Sedgwick to take a job elsewhere. In October 2021, Ms. Hottel recruited Ms. Gallagher to return to Sedgwick to work in a Manager's position. Management reached out to Ms. Gallagher for the Manager's position after she left the company without considering Mr. Khan for the position. Mr. Khan has more experience than Ms. Gallagher and the failure to consider Mr. Khan is another example of Ms. Hottel's bias.

55. Another example of disparate treatment regarding recruitment is Ashlee Timeranko. Ms. Timeranko joined Sedgwick in April or May of 2021, and she worked in Ms. Hottel's unit. Within three to four months, she was promoted to a position of Manager, which was an increase by two levels. Mr. Khan has more experience than Ms. Timeranko and he was asked to (and did) train her when she came to Sedgwick. When Mr. Khan trained her, he learned that she did not know the difference between a general liability policy and an automobile policy, yet somehow she is how a Manager above Mr. Khan, although he has far more experience.

56. A third person who received a promotion to a Manager's position is Michelle Kurak. She joined Ms. Hottel's group and within 3-4 months she was promoted to Manager. Mr. Khan has not been considered by Ms. Hottel for a promotion to manager. Mr. Khan has more experience than Ms. Kurak, particularly in knowledge of general liability policies, which is the type of policy that Ms. Hottel's group handles.

57. Throughout 2021, Mr. Khan shared with Ms. Hottel that he was saving his vacation time to allow him to go on a trip to visit his mother's grave. Since she denied Mr. Khan the opportunity to go to the burial, he had not yet seen his mother's grave. Unfortunately, due to the new strain of the COVID virus, international travel restrictions made it impossible for him to make this trip. Nonetheless, Mr. Khan planned to use his vacation time in December 2021. He had several weeks of vacation time to take before the end of the year and was told if he did not take it, he would lose it. .

58. While Mr. Khan had observed other Claims Examiners take extended vacations, Ms. Hottel informed him that Ms. VanTuyl would have to approve his request to use his vacation time in December.

59. Mr. Khan also informed Ms. Hottel that he had scheduled a very important MRI appointment in Boston on December 13, 2021 and that he needed to take that day off. Ms. Hottel told Mr. Khan that Ms. VanTuyl would have to approve that day. Mr. Khan is unaware of anyone else who was required to get approval to use a PTO day to go to a doctor's appointment.

60. There is no policy against taking his vacation at one time and Ms. Hottel treated Mr. Khan differently than his white, non-Muslim, American born coworkers.

61. In the end, Mr. Khan was forced to cancel his MRI appointment because heI did not want Ms. Hottel to retaliate against him for taking that day off. As a result of Ms. Hottel's actions, Mr. Khan lost 6 PTO days because she did not let him use them in December 2021.

62. Mr. Khan is aware that other employees, who are white, non-Muslin and American born have been permitted to use their vacation days in a lump sum and without accruing them first. For example, Ms. Timeranko took a week of PTO time within months of being at Sedgwick before she had accrued that amount of time.

63. Since the time Mr. Khan started reporting to Ms. Hottel until the present, she has transferred several cases that Mr. Khan has worked on for a very long time to other Claims Examiners. Often times, the cases are near completion and simply need to be closed out. When Ms. Hottel transferred the files to another Examiner, that person received credit for the work he did on the file and Mr. Khan did not. This impacts Mr. Khan's audits, performance reviews and merit increases.

64. As a Claims Examiner, Mr. Khan's files are audited routinely. In late 2021, he received a report from the auditor, Tom Glowacki. Mr. Khan disagreed with the results of the audit and requested a form that would allow him to rebut the results of the audit. This is policy. Mr. Khan was denied the opportunity to supply a rebuttal. Mr. Khan is unaware of any white, non-Muslim or American born workers who were denied the chance to provide a rebuttal.

65. On December 14, 2021, after Mr. Khan was denied the use of his PTO time, he wrote a lengthy email to Defendant Dave North, Sedgwick's Chairman, and Defendant Michael Arbour, Sedgwick's CEO, and explained that he has continued to experience discrimination at Sedgwick. Neither responded to his email.

66. Instead, on December 20, 2021, James Brooks, a Human Resources Manager, contacted Mr. Khan to discuss his complaint.

67. Then, on January 4, 2022, Annette Markel, the Employee Relations Director, contacted me to discuss this complaints.

68. Both claimed that they were going to conduct an investigation into Mr. Khan's complaints. However, Ms. Markel was rude to him, did not take his claims seriously, and toldhime that she represented Sedgwick's interests and not Mr. Khan's. She said that Sedgwick paid her salary and that she would never make final findings that would hurt Sedgwick financially. She told Mr. Khan that if he wanted an advocate, he would have to hire one.

69. On January 6, 2022, Mr. Khan sent an email to Michelle Hay, Global Chief People Officer, explaining that Ms. Markel was rude to him. She did not respond.

70. On January 9, 2022, Mr. Jahn wrote a follow up email to Ms. Markel, Mr. Brooks, and Ms. Hay. Mr. Khan then forwarded to them a notarized statement from his brother explaining that he was present for the telephone call that he had with Ms. Hottel when she denied his request to attend his mother's burial and funeral services.

71. On January 24, 2022 Mr. Khan sent an email to Defendant Nathan Urquhart, the Managing Director of Carlyle. He did not respond.

72. On January 25, 2022, Mr. Khan received a call from Jason Hall. He told Mr. Khan that Sedgwick had "dropped the ball a few times" with him and requested that he make a settlement demand to try to resolve his claims against Sedgwick.

73. On January 28, 2022, Mr. Khan made a settlement demand as requested.

74. On January 31, 2022, Mr. Khan sent Mr. Hall a follow up email with some evidence that Ms. Hottel had given cases that he had worked on to another employee, denying him credit.

75. On February 4, 2022, Mr. Khan sent a follow up email to Mr. Urquhart. He did not respond. On each email he sent to Mr. Urquhart, Mr. Khan requested that he forward copies of his emails to Mr. Kew Song Lee, Chairman of Carlyle, and John Redett, Director and member of Sedgwick's Board of Directors. Mr. Khan made this request because he only had access to Mr. Urquhart's email address.

76. On March 4, 2022, Mr. Khan received an announcement of Sedgwick's Most Valued Performers for 2021. Despite his excellent performance ratings, he was not on the list. Mr. Khan has received numerous complimentary emails from the client Everest Reinsurance Company, telling him that he is the best employee they deal with at Sedgwick. Some have told Mr. Khan that they would move their accounts from Sedgwick if he was not working with them. Leaving Mr. Khan off of this list was discriminatory and retaliatory. On March 5, 2022, Mr. Khan emailed Mr. Brooks explaining that he felt that his absence from the list was the latest discriminatory act from Sedgwick. Mr. Khan received no response.

77. On March 28, 2022 Mr. Khan learned of a Director's position available at the company. He contacted Tierra Morrow, the person from the Talent Acquisition Team who advertised the position, to learn more about the position. To date, Mr. Khan has not received a response from Ms. Morrow.

78. Mr. Khan's discrimination and retaliation at Sedgwick has been continuous since the start of his employment in 2014. The discrimination and retaliation continues to this day, in particular with Ms. Hottel's continued hostility towards him, reassigning his cases, holding him to higher standards and double standards, and overall gaslighting

him. Furthermore, Defendants continue to investigate or remedy Mr. Khan's continued complaints of racial, religious and national origin discrimination claims.

79. As a result of Sedgwick's discrimination and retaliation and Carlyle's failure to address the discrimination and retaliation, Mr. Khan has suffered financial damages and emotional distress.

80. Plaintiff has exhausted his administrative remedies with the Massachusetts Commission Against Discrimination.

## Causes of Action

(Each Cause Of Action Incorporates Therein
All Of The Paragraphs Set Forth, Hereinabove.)

### FIRST CAUSE OF ACTION – RACE DISCRIMINATION IN VIOLATION OF MASS. GEN. LAWS CHAPTER 151B §1, et. seq.

81. This is a cause of action against all Defendants for race discrimination in violation of Massachusetts General Laws Chapter 151B § 1, et. seq.

82. The Plaintiff is Brown / non-Caucasian.

83. The Defendants are aware that Plaintiff is Brown / non-Caucasian.

84. The Plaintiff was subjected to race discrimination, which had the purpose of creating a hostile and humiliating work environment, which interfered with the Plaintiff's ability to do his job.

85. As a result of the Defendants' conduct, the Plaintiff has suffered damages.

### SECOND CAUSE OF ACTION –NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF MASS. GEN. LAWS CHAPTER 151B §1, et. seq.

86. This is a cause of action against all Defendants for national origin discrimination in violation of Massachusetts General Laws Chapter 151B § 1, et. seq.

87. The Plaintiff's national origin is Pakistan.

88. The Defendants are aware that the Plaintiff's national origin is Pakistan.

89. The Plaintiff was subjected to national origin discrimination, which had the purpose of creating a hostile and humiliating work environment, which interfered with the Plaintiff's ability to do his job.

90. As a result of the Defendants' conduct, the Plaintiff has suffered damages.

## THIRD CAUSE OF ACTION –RELIGIOUS DISCRIMINATION IN VIOLATION OF MASS. GEN. LAWS CHAPTER 151B §1, et. seq.

91. This is a cause of action against all Defendants for religious discrimination in violation of Massachusetts General Laws Chapter 151B § 1, et. seq.

92. The Plaintiff's religion is Muslim.

93. The Defendants are aware that the Plaintiff's religion is Muslim.

94. The Plaintiff was subjected to religious discrimination, which had the purpose of creating a hostile and humiliating work environment, which interfered with the Plaintiff's ability to do his job.

95. As a result of the Defendants' conduct, the Plaintiff has suffered damages.

## FOURTH CAUSE OF ACTION – RETALIATION IN VIOLATION OF MASS. GEN. LAWS CHAPTER 151B §1, et. seq.

96. This is a cause of action against all Defendants for retaliation in violation of Massachusetts General Laws Chapter 151B § 1, et. seq.

97. The Plaintiff complained to Defendants that he was subjected to discrimination on the basis of his race, religion and national origin.

98. As a result of the Plaintiff complaining, the Plaintiff was subjected to retaliation, which had the purpose of creating a hostile and humiliating work environment, which interfered with the Plaintiff's ability to do his job.

99. As the result of Plaintiff complaining about the discrimination, Plaintiff has been given less opportunity than his white, non-Muslim and / or American born comparators, including being passed over for several promotions.

100. As a result of the Defendants' conduct, the Plaintiff has suffered damages.

*The Plaintiff demands a jury trial on all triable issues.*

WHEREFORE, the Plaintiff hereby requests that this Honorable Court grant the following relief:

1. Judgment against the Defendants, jointly and individually;

2. Attorney's fees, costs, and expert witness fees;

3. Compensatory damages for emotional distress;

4. Punitive damages pursuant to MGL c. 151B, § 9;

5. Pre-Judgment and Post-Judgment Interest, and

6. Such other relief as the Court deems just and fair.


September 14, 2022

                                                   The Plaintiff,
                                                 Mamnoon Ahmed Khan,
                                                 By his attorney,

                                                 _____
                                                 Suzanne L. Herold (BBO# 675808)
                                                 Herold Law Group, P.C.
                                                 50 Terminal Street
                                                 Building 2, Suite 716
                                                 Charlestown, MA 02129
                                                 (617) 977-4015 (t)
                                                 (617) 855-9873 (f)
                                                 suzie@heroldlawgroup.com

(TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED:
TORT – MOTOR VEHICLE TORT – CONTRACT –
EQUITABLE RELIEF – OTHER)

## COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT
CIVIL ACTION
NO. 22-cv-0853

_Mamnoon A. Khan_, Plaintiff(s)

v.

_Sedgwick Claims Management Services, Inc., Kim Hottel, Colleen Van Tuyl, Dave North, Michael Arbow, the Carlyle Group, Inc. & Nathan Urquhart_, Defendant(s)

### SUMMONS

To the above-named Defendant: _Sedgwick Claims Management Services, Inc._

You are hereby summoned and required to serve upon _Suzanne L. Herd_, plaintiff's attorney, whose address is _Herd Law Group, PC, 50 Terminal Street, Bldg 2, Ste 716, Charlestown, MA 02129_ an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Dedham either before service upon the plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

WITNESS, Heidi E. Brieger Esquire, at _____ the _14th_ day of _October_, in the year of our Lord two thousand and _22_.

_____ Clerk.

NOTES:
1. This summons is issued pursuant to Rules 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each such defendant, each should be addressed to the particular defendant.

F-33

(TO PLAINTIFF'S ATTORNEY:   PLEASE CIRCLE TYPE OF ACTION INVOLVED:
TORT – MOTOR VEHICLE TORT – CONTRACT –
EQUITABLE RELIEF – OTHER)

## COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.                                           SUPERIOR COURT
                                                      CIVIL ACTION

                                                      NO. 22-CV-0853

_Mamnoon A. Khan_, Plaintiff(s)

v.

_Sedgwick Claims Management Services, Inc., Kim Hottel, Colleen Van Tuyl, Dave North, Michael Arbow, the Carlyle Group, Inc.; Nathan Urquhart_, Defendant(s)

### SUMMONS

To the above-named Defendant: _Kim Hottel_

You are hereby summoned and required to serve upon _Suzanne L. Herold_, plaintiff's attorney, whose address is _Herolt Law Group, P.C., 50 Terminal Street, Bld 2, Ste 7JU, Charlestown, MA 02129_ an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Dedham either before service upon the plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

WITNESS, Heidi E. Brieger Esquire }, at _____ the _14th_

day of _October_, in the year of our Lord two thousand and _22_

_____ Clerk.

NOTES:
1. This summons is issued pursuant to Rules 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each such defendant, each should be addressed to the particular defendant.

F-33

(TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED:
TORT – MOTOR VEHICLE TORT – CONTRACT –
EQUITABLE RELIEF – OTHER)

## COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.                                         SUPERIOR COURT
                                                     CIVIL ACTION
                                                     NO. 22-cv-0853

_Mamnoon A. Khan_, Plaintiff(s)

v.

Sedgwick Claims Management Services, Inc., Kim Hottel, Colleen Van Tuyl, Dave North, Michael Arbour, the Carlyle Group, Inc & Nathan Waunhart, Defendant(s)

### SUMMONS

To the above-named Defendant: Colleen Van Tuyl

You are hereby summoned and required to serve upon _Suzanne L. Herold_, plaintiff's attorney, whose address is _Herold Law Group, P.C., 50 Terminal Street, Bld 2, Ste 716, Charlestown, MA 02129_ an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Dedham either before service upon the plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

WITNESS, Heidi E. Brieger  Esquire , at _____ the 14th
day of October, in the year of our Lord two thousand and 22

_____ Clerk.

NOTES:
1. This summons is issued pursuant to Rules 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each such defendant, each should be addressed to the particular defendant.

F-33

(TO PLAINTIFF'S ATTORNEY:   PLEASE CIRCLE TYPE OF ACTION INVOLVED:
TORT – MOTOR VEHICLE TORT – CONTRACT –
EQUITABLE RELIEF – OTHER)

# COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT
CIVIL ACTION

NO. 22-cv-0853

_____Mamnoon A. Khan_____, Plaintiff(s)

v.

Sedgwick Claims Management Services, Inc., Kim Hottel, Colleen Van Tuyl, Dave North, Michael Arbour, the Carlyle Group, Inc. & Nathan Urquhart, Defendant(s)

## SUMMONS

To the above-named Defendant: Dave North

You are hereby summoned and required to serve upon _Suzanne L. Herold_, plaintiff's attorney, whose address is _Herold Law Group, P.C., 50 Terminal Street, Bld 2, Ste 716, Charlestown, MA 02129_ an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Dedham either before service upon the plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

WITNESS, Heidi E. Brieger   Esquire ], at _____ the 14th

day of __October__, in the year of our Lord two thousand and __22__

_____ Clerk.

NOTES:
1. This summons is issued pursuant to Rules 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each such defendant, each should be addressed to the particular defendant.

F-33

(TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED:
TORT – MOTOR VEHICLE TORT – CONTRACT –
EQUITABLE RELIEF – OTHER)

# COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT
CIVIL ACTION
NO. 22-cv-0853

_Mamnoon A. Khan_, Plaintiff(s)

v.

_Sedgwick Claims Management Services, Inc., Kim Hottel, Colleen Van Tuyl, Dave North, Michael Arbour, the Carlyle Group, Inc. & Nathan Urquhart_, Defendant(s)

## SUMMONS

To the above-named Defendant: Michael Arbour

You are hereby summoned and required to serve upon Suzanne L. Herold, plaintiff's attorney, whose address is Herold Law Group, P.C., 50 Terminal Street, Bld 2, Ste 716, Charlestown, MA 02129 an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Dedham either before service upon the plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

WITNESS, Heidi E. Brieger Esquire }, at _____ the 14th day of October, in the year of our Lord two thousand and 22

_____ Clerk.

NOTES:
1. This summons is issued pursuant to Rules 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each such defendant, each should be addressed to the particular defendant.

F-33

(TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED:
TORT - MOTOR VEHICLE TORT - CONTRACT -
EQUITABLE RELIEF - OTHER)

## COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT
CIVIL ACTION
NO. 22-cv-0853

_____Mamnoon A. Khan_____, Plaintiff(s)

Sedgwick Claims Management Services, Inc., Kim Hottel, Colleen Van Tuyl, Dave North, Michael Arbour, The Carlyle Group, Inc. ; Nathan Wayhart, Defendant(s)

### SUMMONS

To the above-named Defendant: The Carlyle Group, Inc.

You are hereby summoned and required to serve upon Suzanne L. Herold, plaintiff's attorney, whose address is Herold Law Group, P.C., 50 Terminal Street, Bldg 2, Ste. 716, Charlestown, MA 02129 an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Dedham either before service upon the plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

WITNESS, Heidi E. Brieger Esquire, at _____ the 14th day of October, in the year of our Lord two thousand and 22.

_____, Clerk.

NOTES:
1. This summons is issued pursuant to Rules 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each such defendant, each should be addressed to the particular defendant.

F-33

(TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED:
TORT – MOTOR VEHICLE TORT – CONTRACT –
EQUITABLE RELIEF – OTHER)

## COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT
CIVIL ACTION
NO. 22-cv-0853

_Mamnoon A. Khan_, Plaintiff(s)

v.

_Sedgwick Claims Management Services, Inc., Kim Hottel, Colleen Van Tuyl, Dave North, Michael Arbour, the Carlyle Group, Inc.; Nathan Urquhart_, Defendant(s)

### SUMMONS

To the above-named Defendant: Nathan Urquhart

You are hereby summoned and required to serve upon Suzanne L. Herold, plaintiff's attorney, whose address is Herold Law Group, PC, 50 Terminal Street, Bld 2, Ste 716, Charlestown, MA 02129 an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Dedham either before service upon the plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

WITNESS, Heidi E. Brieger  Esquire, at _____ the 14th day of October, in the year of our Lord two thousand and 22.

_____ Clerk.

NOTES:
1. This summons is issued pursuant to Rules 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each such defendant, each should be addressed to the particular defendant.

F-33